# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

HIGH PLAINS LIVESTOCK, LLC,
a Texas limited liability company,
d/b/a Producers Livestock Auction,
MICHAEL FLEN, CALVIN PAREO, and
DARCIE PAREO,

      Plaintiffs,

v.

BARRY ALLEN, SHAWN DAVIS, RAY
BACA, in their individual and official
capacities, and THE NEW MEXICO
LIVESTOCK BOARD,

      Defendants.

No. 2:17-cv-00349-PJK-GBW

## ORDER GRANTING MOTION TO DISMISS FEDERAL CLAIMS

THIS MATTER is before the court on Individual Defendants Barry Allen, Shawn Davis, and Ray Baca's Motion to Dismiss Federal Claims in the Second Amended Complaint filed June 11, 2018. ECF No. 42. Upon consideration thereof, the motion is well taken and should be granted.

## Background

Plaintiffs High Plains Livestock, LLC ("High Plains") and its owner (Michael Flen) as well as two persons affiliated with High Plains (Calvin and Darcie Pareo)

brought this action against the New Mexico Livestock Board ("NMLB"), two of its law enforcement agents (Defendants Barry Allen and Shawn Davis), and its executive director (Ray Baca). The court gathers the following from the Second Amended Complaint.

As of 2009, Plaintiff High Plains was licensed to conduct livestock auctions. <u>See</u> N.M. Stat. Ann. § 77-10-1; Second Am. Compl. ¶ 13 (ECF No. 37). According to the Plaintiffs, the individual defendants and the NMLB engaged in unconstitutional and tortious conduct in the intervening years that interfered with High Plains' business. The Second Amended Complaint traces Defendants' interference to 2009, before High Plains received its auction license. Plaintiffs allege that the NMLB executive director warned Michael Flen that he could not hire Plaintiffs Calvin and Darcie Pareo because they were "bad people." <u>Id.</u> at ¶¶ 19–20. That same year, presumably after High Plains received its license, the NMLB charged High Plains with failing to properly account for sales at each auction and comply with permitting requirements for out-of-state cattle. <u>Id.</u> at ¶ 21–22. Plaintiffs maintain they were in compliance until NMLB brand inspector Terry Roberts arbitrarily issued a citation. <u>Id.</u> at ¶ 22. The charges were dismissed. <u>Id.</u> at ¶¶ 21, 23.

The Second Amended Complaint alleges harassment and arbitrary action following the dismissal. For example, Agent Allen began conducting random inspections and requiring paperwork not required of other sale barns. <u>Id.</u> at ¶¶ 23–24. In August 2011, Mr. Baca required a brand inspector (Terry Roberts) to direct Mrs. Pareo to "run cattle through a chute." <u>Id.</u> at ¶ 27. When Mrs. Pareo responded it could not be done at that time, Mr. Roberts "yelled at [her], 'you will do what I say when I say it.'" <u>Id.</u> at

¶ 28. The Pareos called Mr. Roberts's supervisor, who promised Mr. Roberts would not return. Id. Despite the assurances, Mr. Roberts returned but was told by the Pareos to leave and not return. Id. High Plains was cited the following week for not giving Mr. Roberts proper paperwork and for an assault involving Mr. Pareo. Id. at ¶ 29. A jury acquitted High Plains and Mr. Pareo. Id. at ¶ 30.

Thereafter, the NMLB denied High Plains' request to conduct two sales per week. Id. at ¶ 32. Mr. Baca then directed brand inspectors not to stay at High Plains' sales past 7:00 p.m. and to return, if at all, the following morning. Id. Plaintiffs maintain that such a requirement was not similarly imposed on other sale barns and it interfered with the ability to conduct competitive livestock auctions. Id.

The Second Amended Complaint also describes a 2013 directive to the New Mexico Department of Transportation by Mr. Baca to stop High Plains livestock haulers so as to check licenses and the number of cattle. Id. at ¶ 37. In addition, High Plains' auction license was contingent on moving to a new facility, but Agents Allen and Davis prohibited High Plains from doing so despite previous assurances to High Plains that requirements to move were satisfied. Id. at ¶ 33. The NMLB also directed the Animal Plant and Health Inspections Services — an agency purportedly empowered to authorize High Plains' move — to deny High Plains' request, but that agency disregarded the directive and issued authorization. Id. at ¶ 34.

After High Plains moved, approximately ten brand inspectors seized, without a warrant, "metal clips[] and back tags." According to head brand inspector Troy

Patterson, the tags were deficient and could not be used, although a state veterinarian assured High Plains that the tags were indeed compliant.[1]  Id. at ¶ 35.

Defendants then conducted a second raid of High Plains, this time with a warrant that authorized the seizure of "all business records in High Plains' possession."  Id. at ¶ 38.  Plaintiffs state that the warrant was issued without probable cause and with deficient affidavits.  Id.  They maintain they were not free to leave during the resulting search because of Defendants' show of authority.  Id.  In the raid, Defendants seized not only business records and computers, but also (1) the Pareos' daughter's birth certificate and shot record; (2) the Pareos' personal bank statements from before 2014; (3) the Pareos' complete bankruptcy file from before 2013; (4) negotiable instruments of over $50,000 made payable to "Plaintiff"; and (5) billing records for feed that had not been posted to client ledgers, and "numerous other personal records."  Id.  Agent Allen refused High Plains' request for a copy of seized electronic accounting records.  Id.  Agents Allen and Davis also took seized evidence prior to cataloging, and much of the evidence is now unaccounted for and missing, if not intentionally destroyed.  Id. at ¶¶ 38, 43.

The Second Amended Complaint alleges that Agents Davis and Allen continued to undermine High Plains' business following the raid.  Not only did they publish statements that Plaintiffs were "crooks," but they also made defamatory statements to potential customers and threatened them with criminal charges should they do business

---

[1]  Plaintiffs also state that Agents Allen and Davis made threats to two other veterinarians, causing them to rescind their agreement to serve High Plains.  Second Am. Compl. ¶ 36.

with High Plains.  Id. at ¶ 40.  Agent Allen also asked a potential High Plains customer if

he knew any "bull-dog type" IRS auditors so Agent Allen could release them on High

Plains.  Id.

Criminal charges were filed against Plaintiffs after the raid, and the NMLB

revoked High Plains' license.  Id. at ¶ 40.  Prior to trial, Agents Davis and Allen

interviewed and captured the audio of multiple witnesses, who provided allegedly

"exculpatory testimony."  Id. at ¶¶ 41, 43.  Agents Davis and Allen then hid or destroyed

the recordings and, under oath, denied their existence.  Id. at ¶¶ 41–43.  Even absent this

purportedly exculpatory evidence, the Second Amended Complaint states that the charges

were dismissed after a jury trial.  Id. ¶ 40.

Plaintiffs brought their complaint in state court, Compl. (ECF No. 1-1),[2] and

Defendants removed to federal court.  Notice of Removal (ECF No. 1).  Plaintiffs moved

for leave to amend their complaint, and the magistrate judge, based solely on considering

the prejudice to Defendants, granted leave.  ECF No. 36.  Plaintiffs filed their Second

Amended Complaint in April 2018.  Count I alleges Mr. Baca and Agents Allen and

Davis violated the New Mexico Tort Claims Act in their personal capacities, and

specifically alleges: (1) malicious prosecution; (2) abuse of process; (3) libel, slander,

defamation of character; (4) violation of property rights; (5) deprivation of any rights,

privileges or immunities secured by the constitution and laws of the United States or New

---

[2]  Plaintiffs later filed a First Amended Complaint in state court.  See Mot. for Leave to
File Second Am. Compl. ¶ 2 (ECF No. 22).

Mexico; (6) due process violations; and (7) equal protection violations. Count II alleges violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983 against Mr. Baca and Agents Allen and Davis in their personal capacities. Specifically, Count II alleges (1) Fourth Amendment violations as incorporated under the Fourteenth Amendment; (2) Sixth Amendment violations as incorporated under the Fourteenth Amendment; (3) and due process and equal protection violations under the Fourteenth Amendment. Count III alleges malicious prosecution against Mr. Baca and Agents Allen and Davis in their personal capacities under 42 U.S.C § 1983. Finally, Count IV requests damages, fees, and preliminary and permanent injunctive relief against all defendants. On June 11, 2018, Individual Defendants moved to dismiss Plaintiffs' federal claims pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 42.

## Discussion

A defendant may move to dismiss for failure to state a claim upon which this court may grant relief. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion, this court accepts all well-pled factual allegations as true and views them in the light most favorable to the plaintiff. Butler v. Bd. of Cty. Comm'rs for San Miguel Cty., 920 F.3d 651, 654 (10th Cir. 2019). A plaintiff's request for relief must be "plausible on its face"; it must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Individual Defendants argue Plaintiffs have failed to meet this standard as to their claims for relief under the Fourth

Amendment, Sixth Amendment, Fourteenth Amendment, and as to their malicious prosecution claim under § 1983.

Individual Defendants also argue they are entitled to qualified immunity. A defense of qualified immunity is most often resolved at the summary judgment stage, but this court may grant a motion to dismiss on that basis upon a defendant's showing the conduct alleged in the complaint was objectively reasonable. Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity shields government officials from liability for civil damages if their conduct did not violate clearly established constitutional rights. White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Liability "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (internal quotation marks omitted).

To overcome a qualified immunity defense, a plaintiff must show (1) that there was a violation of a constitutional right, and (2) that a reasonable person would have known the right was clearly established at the time of the alleged violation. Pearson, 555 U.S at 232. The right must be defined with specificity, and for the law to be clearly established, the constitutional question must be beyond debate. Kisela v. Hughes, 138 S. Ct. 1138, 1152 (2018). The law must be evaluated at the time of the events in question.

Id. at 1154.  A plaintiff must usually identify existing precedent that would make it apparent to an official that his or her conduct in these circumstances was unlawful; there are few obvious situations where such case law is not essential.  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018).  Courts may look to either factor to resolve the question of qualified immunity.  See Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009).

## A.      Plaintiffs' Fourth Amendment Claims

Plaintiffs allege four separate Fourth Amendment violations.  They first challenge the constitutionality of the search warrant authorizing the seizure of High Plains' business records as not supported by probable cause and made on the basis of invalid affidavits. Second Am. Compl. ¶ 79.  Next, they argue the search warrant lacked particularity as to the property seized and not returned to them.  Id. at ¶ 80.  Third, they claim they were unreasonably seized during the raid.  Id. at ¶ 81.  Finally, they challenge the warrantless seizure of their metal clips and tags.  Id. at ¶ 82.

### 1.      Plaintiffs' Allegation of "Invalid Affidavits" Fails to State a Claim

Search warrants may be issued only "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  Where probable cause derives solely from a false statement, the search warrant may be improper if the statement was made "knowingly and intentionally, or with reckless disregard for the truth."  Franks v. Delaware, 438 U.S. 154, 155 (1978).  At the pleading stage, a plaintiff must support his allegation of falsity with facts sufficient to allow this court to draw a reasonable inference

8

in his favor.  Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011).

Plaintiffs have failed to plausibly allege a Fourth Amendment violation as to the challenged search warrants.  Plaintiffs state only a legal conclusion that the affidavits were invalid and not otherwise supported by probable cause.  Second Am. Compl. ¶ 38. This is not enough.  Plaintiffs attempt to fill this factual void in their response by citing to an affidavit and sales records ostensibly demonstrating that the warrant was pretextual and lacking in probable cause.  Pls.' Resp. Defs.' Mot. Dismiss 9–10.  But the critical determination on a motion to dismiss is whether the complaint itself (with narrow exceptions)[3] contains facts sufficient to support a facially plausible claim.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  The allegation that Agent Allen's affidavit was "invalid" is merely a legal conclusion not supported by factual support in the complaint and thus Individual Defendants are entitled to dismissal as to this claim.

---

[3]  A district court may consider the following not contained in the complaint: (1) documents the complaint incorporates by reference; (2) documents referred to by the complaint that are central to the dispute, the authenticity of which is not disputed; and (3) facts of which a court may take judicial notice.  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  Neither the affidavit nor the High Plains sales records Plaintiffs cite fit into any of these categories, and this court declines to consider them, particularly given that Plaintiffs were allowed to amend previously.

### 2. Individual Defendants are Entitled to Qualified Immunity as to the Items Seized During the Search of High Plains' Premises

Search warrants must also "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's particularity requirement protects against general searches by limiting a searching officer's discretion to search only evidence relating to a specific crime for which there is probable cause. United States v. Villanueva, 821 F.3d 1226, 1238 (10th Cir. 2016). Searches are therefore unconstitutional if either the search warrant is overbroad or if executing officers exceed the scope of a constitutionally particularized warrant. See United States v. Carey, 172 F.3d 1268, 1272–73 (10th Cir. 1999). Plaintiffs contend the latter occurred here. According to the Second Amended Complaint, the search warrant authorized a search of all business records in High Plains' possession, but the executing officers confiscated items that were not business records. Individual Defendants argue the seizures were reasonable as a matter of law, or alternatively, that they are entitled to qualified immunity because the seizures did not violate Plaintiffs' clearly established constitutional rights. Defs.' Mot. Dismiss 9.

Searches that "grossly exceed the scope of a search warrant" are unconstitutional. United States v. Hargus, 128 F.3d 1358, 1363 (10th Cir. 1997) (quoting United States v. Foster, 100 F.3d 846, 849–50 (10th Cir. 1996)). On the other hand, in the criminal context, mere seizure of some items not described in the warrant does not necessarily constitute a constitutional violation warranting suppression. Id. Here, the ultimate question is whether the items seized — items that, according to the Second Amended

Complaint, were decidedly not High Plains' business records — were not only so far outside the scope of the warrant, but also that a reasonable executing officer would have known as much.

When a defendant asserts qualified immunity, the plaintiff carries the burden of showing that the unlawful conduct was "apparent" from established law. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Although a plaintiff need not show the defendant's specific conduct has been previously held unlawful, he must identify controlling precedent or "a robust set of cases" demonstrating the unconstitutionality of similar conduct. <u>Kisela</u>, 138 S. Ct. at 1152. In response to Individual Defendants' assertion of qualified immunity, Plaintiffs cite no law establishing that the items seized were so beyond the scope of the warrant that their seizure was clearly prohibited. Instead, they cite only to general propositions that warrants must particularly describe items to be seized. Resp. 8–9. Plaintiffs thus do not meet their burden to overcome qualified immunity.

**3.   Plaintiffs Do Not Sufficiently Allege They Were Unconstitutionally Seized**

The Fourth Amendment also protects against unreasonable seizures of one's person. U.S. Const. amend. IV. A person has been seized pursuant to the Fourth Amendment if, in light of the totality of the circumstances, "a reasonable person would have believed he was not free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). In general, seizures are unreasonable, thereby unconstitutional, absent probable

cause to believe the person seized has committed a crime.  Bailey v. United States, 568
U.S. 186, 190 (2013).

The Second Amended Complaint provides only legal conclusions that the raid was
an unreasonable seizure because Plaintiffs could not walk away given a show of authority
and the warrant did not name them.  Id. at ¶ 81.  Plaintiffs attach a declaration of Mrs.
Pareo in their response that purportedly offers factual support of this claim, and they
request leave to amend to properly plead these facts.  Resp. 3 n.2, 9; Decl. of Darcie
Pareo (ECF No. 48-1).

Plaintiffs are not entitled to amendment as a matter of course, as they have already
once amended their complaint, and more than 21 days has elapsed since their serving it.
Fed. R. Civ. P. 15(a)(1).  They thus require either consent of Defendants (which
Defendants have not given) or leave from this court to amend their complaint.  Fed. R.
Civ. P. 15(a)(2).  Although Fed. R. Civ. P. 15(a)(2) instructs courts to "freely give leave
when justice so requires," courts may look at the surrounding circumstances which
necessitate amendment.

Leave to amend may be denied given "undue delay, bad faith or dilatory motive,
failure to cure deficiencies by amendments previously allowed, or undue prejudice to the
opposing party, or futility of amendment."  Castleglen, Inc. v. Resolution Trust Corp.,
984 F.2d 1571, 1585 (10th Cir. 1993).  Courts may deny leave to amend "[w]here a party
seeking amendment knows or should have known of the facts upon which the proposed
amendment is based but fails to include them in the original complaint."  Parker v.
Champion, 148 F.3d 1219, 1222 (10th Cir. 1998) (internal alterations and quotation

marks omitted).  Plaintiffs provide no explanation for failing to plead these seemingly central facts.  As is, the claim that Plaintiffs were unreasonably seized cannot cross the line from possible to plausible.  See <u>Warnick v. Cooley</u>, 895 F.3d 746, 752–53 (10th Cir. 2018).  Individual Defendants are entitled to dismissal of this claim.

**4.      Plaintiffs Fail to State a Claim as to the Warrantless Seizure of Metal Clips and Tags**

Plaintiffs further allege "approximately 10 . . . brand inspectors presented at High Plains operations and without justifiable or probable cause or consent seized High Plains' property without warrant, to wit, issued metal clips and back tags."  Second Am. Comp. ¶ 35.  However, they do not allege any Individual Defendant ordered, participated in, or were present during the seizure.  Law enforcement officers have an affirmative duty to prevent other law enforcement officers in their presence from violating citizens' constitutional rights.  <u>Vondrak v. City of Las Cruces</u>, 535 F.3d 1198, 1210 (10th Cir. 2008).  But such a duty cannot be imposed on those neither present nor personally responsible for the claimed constitutional deprivation.  <u>Kansas Penn Gaming, LLC</u>, 656 F.3d at 1214.  None of the Individual Defendants is a brand inspector; the Second Amended Complaint describes Mr. Baca as the acting director of the NMLB, and Agents Allen and Davis as NMLB law enforcement agents.  Compl. ¶¶ 5–7.  Accordingly, the Second Amended Complaint does not allege Individual Defendants committed this purported constitutional violation.

Plaintiffs counter that § 1983 imposes liability not only on government officials who "subject[]" any person to unconstitutional treatment, but also on those who "cause[]"

any person to be so subjected. Resp. 16 (quoting <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1292 (10th Cir. 2004)). This may be true, but the Second Amended Complaint does not allege the Individual Defendants either were the primary participants in or caused the constitutional violations. Absent any such allegations, Individual Defendants are entitled to dismissal of this claim as well.

**B.    Plaintiffs' Sixth Amendment Claims**

The Second Amended Complaint next alleges Defendants violated Plaintiffs' Sixth Amendment rights by destroying or secreting exculpatory audio evidence, and by lying about its existence. Both claims must be dismissed for failure to state a claim.

**1.    Plaintiffs Fail to Allege the Destruction of Allegedly Exculpatory Evidence Was a Constitutional Violation**

The right to a fair trial derives not from the Fourteenth Amendment's guarantee of due process, but from the Sixth Amendment's procedural protections before and during trial. <u>Albright v. Oliver</u>, 510 U.S. 266, 276 (1994). Inherent in such right is the government's duty to preserve exculpatory evidence. <u>Morgan v. Gertz</u>, 166 F.3d 1307, 1310 (10th Cir. 1999). Failure to do so gives rise to an actionable claim under § 1983, but only if the withholding or destruction of exculpatory evidence results in the denial of a fair trial. <u>Id.</u> Denial of the right to a fair trial is not actionable, however, if the criminal charges have been dismissed, or if the court enters a judgment of acquittal, even upon a showing that the government acted intentionally or in bad faith. <u>Id.</u>

The Second Amended Complaint provides the following material facts to support Plaintiffs' claim: (1) Agents Allen and Davis tape-recorded interviews with numerous

High Plains' customers, Second Am. Compl. ¶ 41; (2) the tape recordings contained exculpatory information evidencing High Plains' compliance with New Mexico law, id.; and (3) Defendants withdrew the exculpatory tapes from the Roosevelt County Sheriff's evidence room and never returned them.  Id. at ¶ 43.  Missing from the Second Amended Complaint are any facts giving rise to a plausible denial of a fair trial.  Plaintiffs allege that after the raid, "[c]riminal charges were filed . . . and subsequently dismissed at a jury trial."  Id. at ¶ 40.  It is unclear whether this statement refers to the case involving the allegedly exculpatory evidence or a separate proceeding.  Notwithstanding this ambiguity, the Second Amended Complaint nevertheless fails to allege a conviction or any adverse outcome.  Even if, as Plaintiffs assert, Agents Davis and Allen acted intentionally and in bad faith in destroying the tape-recordings, Individual Defendants are entitled to dismissal of this claim.

2. **Plaintiffs' Claim that Agent Davis Perjured Himself During Grand Jury Testimony is Not Constitutionally Cognizable**

Plaintiff's claim that Agent Davis perjured himself in grand jury proceedings must similarly be dismissed.  In Briscoe v. LaHue, the Supreme Court held government officials have absolute immunity from § 1983 claims of perjured testimony.  460 U.S. 325, 342–43 (1983).  It noted that "officers testify in scores of cases every year," and that "defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses."  Id. at 343.  Allowing § 1983 lawsuits against the state's official witnesses for alleged perjury "might well impose significant burdens on the judicial system and law-enforcement resources."  Id.  A complaint containing such an

allegation therefore fails to state a cognizable cause of action.  Miller v. Glanz, 948 F.2d 1562, 1570 (10th Cir. 1991).  Because Plaintiffs' claim is exactly the sort prohibited by Briscoe, and because Plaintiffs have offered no explanation to the contrary, see Resp. 16–18, the claim must be dismissed.

**C.    Plaintiffs' Fourteenth Amendment Claims**

Plaintiffs also allege Defendants violated their Fourteenth Amendment due process rights by (1) causing the allegedly improper search warrant to be issued; (2) destroying exculpatory evidence; (3) depriving Plaintiffs of their seized effects without any right to replevin; and (4) arbitrarily, and after intentional misrepresentations, depriving Plaintiffs of their auction license.  Plaintiffs further allege Defendants violated their Fourteenth Amendment right to equal protection by singling out High Plains for disparate, arbitrary, and abusive treatment.

**1.    Defendants Are Entitled to Dismissal of Plaintiffs' Due Process Claims**

Plaintiffs' first two due process claims — that Defendants caused a search warrant to be issued without probable cause, and that Defendants destroyed exculpatory evidence — are, as Individual Defendants rightly note, reformulations of their Fourth and Sixth Amendment claims.  Mot. Dismiss at 14.  When a plaintiff alleges the denial of a right explicitly enumerated in the Bill of Rights, that text, "not the more generalized notion of 'substantive due process,'" guides the court's analysis.  Albright, 510 U.S. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  As discussed supra, a challenge to the validity of a search warrant is properly assessed under the Fourth Amendment, and

an allegation of the destruction of exculpatory evidence is a Sixth Amendment claim. Accordingly, this court declines to consider Plaintiffs' first two due process claims.

Plaintiffs' next claim — that they have a continued property interest in items seized during the search and that they lack "any cognizable procedural process to replevin" — must similarly be dismissed. Citing to Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986), Plaintiffs appear to argue that the absence of a state remedy to replevy seized property gives rise to a proper § 1983 claim. Second Am. Compl. ¶ 94. This contention is puzzling, as there indeed exists a state-law remedy. See N.M. Stat. Ann. § 42-8-3 (allowing lawsuits in replevin against an officer in possession of property seized wrongfully). In light of such a remedy, a § 1983 action is proper only if the state has denied plaintiffs a fair hearing or other process; mere deprivation of plaintiffs' property rights is insufficient. See Zinermon v. Burch, 494 U.S. 113, 126 (1990). Plaintiffs do not acknowledge the existence of a state-law remedy, nor does the Second Amended Complaint allege that Plaintiffs brought suit in replevin or were denied a fair hearing. The absence of such facts is fatal to Plaintiffs' § 1983 replevin claim.

Plaintiffs' final due process claim alleges Defendants revoked Plaintiffs' livestock auction license "on the basis of pending criminal charges." Second Am. Compl. ¶ 95. Plaintiffs further assert the NMLB, without informal or formal rule making, revoked High Plains' license after changing the criteria for receiving a license, "provid[ed] disinformation," imposed arbitrary and burdensome veterinary requirements on High Plains, intentionally violated the Packers and Stockyard Act of 1921, and engaged in

"other conduct." Id. at ¶ 47.  Disregarding blanket legal conclusions and bare allegations,

as this court must, Twombly, 550 U.S. at 555, Plaintiffs' core allegation is that

Defendants' revocation of Plaintiffs' livestock auction license "due to merely pending,

unproven, charges" constituted a deprivation of their property interest without sufficient

process.[4]  Id. at ¶ 40.

The Due Process Clause of the Fourteenth Amendment protects against

deprivation by any state of property interests without allowing for sufficient process.

U.S. Const. amend. XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 576–77 (1972).  To

sustain a § 1983 procedural due process cause of action, a plaintiff must allege (1) the

deprivation of a constitutionally cognizable property interest, and (2) a lack of

constitutionally adequate notice and a hearing.  Martin Marietta Materials, Inc. v. Kansas

Dep't of Transp., 810 F.3d 1161, 1172 (10th Cir. 2016).  This in turn requires a showing

that the alleged property interest is specific and presently enforceable, and that the

---

[4]  Accordingly, this court will not consider Plaintiffs' unsupported allegations that
Defendants violated the Packers and Stockyard Act of 1921 and engaged in "other
conduct."  The complaint also appears to allege that Defendants improperly imposed new
criteria for receiving or renewing a livestock auction license, that they misrepresented to
Plaintiffs such requirements, and that Plaintiffs detrimentally relied on Defendants'
misrepresentations, costing them their license.  In support, Plaintiffs state: (1) "High
Plains justifiably relied and complied with requirements as represented by Defendants,"
Second Am. Compl. ¶ 16; (2) Agent Allen imposed new, arduous paperwork
requirements not similarly imposed on other sale barns, id. at ¶¶ 23–24; (3) Agents Allen
and Davis tried (to no avail) to prevent High Plains from moving to a new facility, id. at
¶¶ 33–34; and (4) Agents Allen and Davis caused veterinarians to rescind their
acceptance of service to High Plains.  Id. at ¶ 35.  Although Plaintiffs describe unsavory
behavior, they fail to state facts supporting their plausible reliance on Defendants'
purported misrepresentations and to connect such reliance to the revocation of Plaintiffs'
license.

plaintiff has "a legitimate claim of entitlement to it"; mere "expectation" of a continued

interest is insufficient. Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559, 1569 (10th Cir.

1993) (quoting Bd. of Regents, 408 U.S. at 577). Whether a plaintiff has a property

interest is determined from a source independent of the Constitution, such as state law,

Brown v. Eppler, 725 F.3d 1221, 1226 (10th Cir. 2013), and the legitimacy of the

entitlement depends on "the degree of discretion given the decisionmaker and not on the

probability of the decision's favorable outcome." Jacobs v. City of Lawrence, 927 F.2d

1111, 1116 (10th Cir. 1991). In other words, the state has not created an entitlement if

officials retain complete discretion to grant or deny a benefit. Town of Castle Rock v.

Gonzales, 545 U.S. 748, 756 (2005). On the other hand, a property interest is

constitutionally cognizable if governing procedures, "if followed, require a particular

outcome." Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1217

(10th Cir. 2003).

According to Plaintiffs, the NMLB retains discretion to regulate and revoke

livestock auction licenses pursuant to Chapter 77, Article 10 of the New Mexico Statutes

("Livestock Auction Markets"), but it is estopped from any discretion in light of its

"intentional misrepresentations." Second Am. Compl. ¶¶ 47, 95. The text of that statute

is therefore an appropriate starting point. Pursuant to N.M. Stat. Ann. § 77-10-2(A), only

persons holding an NMLB-issued license may operate a livestock auction market in New

Mexico. Such licenses are valid for one year and are issued upon "satisf[action] [of] the

conditions of application." N.M. Stat. Ann. § 77-10-2(E). N.M. Stat. Ann. § 77-10-3

imposes duties on licensees, the violation of which may lead to the cancellation of the

livestock auction license.  N.M. Stat. Ann. § 77-10-2(F).  These duties include "allow[ing] the [NMLB] and its members and officials . . . convenient access to the livestock auction market and its books and records," "account[ing] and [payment] to the owner of the livestock" after the sale of livestock, "mak[ing] promptly after each sale and keep[ing] for a period of three years a complete record of the sale," and "be[ing] responsible for the wrongful acts or omissions of [the licensee's] agents and employees." Id. § 77-10-3.  In addition, Title 21, Chapter 35, Part 4 of the New Mexico Administrative Code provides, "Violation of any rule or statute on livestock market property by owner, agent, operator or employee may result in suspension or revocation of license."  N.M. Code R. § 21.35.4.8(H).

Turning first to whether Plaintiffs have a protected property interest in their livestock auction license, the NMLB's guiding rules sufficiently constrain its discretion to deny the issuance of a license.  As long as a license applicant satisfies the "conditions of application," the NMLB "shall issue a license good for one year."  N.M. Stat. Ann. § 77-10-2(E) (emphasis added).  The statute's mandatory language leaves little room for discretion should the applicant comply with all requirements.  Compare Brown, 725 F.3d at 1227 (a bus passenger had a protected property interest in continued access to public transportation when the public transit authority's rules limited its discretion to ban riders to clearly defined circumstances), with Ripley v. Wyoming Med. Ctr., Inc., 559 F.3d 1119, 1124–27 (state hospitals' consideration of doctors for admission to the medical staff based on "competency and character" did not create a guarantee of admission).

Accordingly, Plaintiffs had a "legitimate claim of entitlement" to their license provided they complied with all "conditions of application" and with their statutorily mandated duties. Individual Defendants argue they did not, and that Plaintiffs have therefore failed to plead a cognizable property interest. Defendants are correct to note that the NMLB has the discretion to suspend or revoke livestock auction licenses upon violation of "any rule or statute on livestock market property." Mot. Dismiss 18 (quoting N.M. Code R. § 21.35.4.8(H)). But the Second Amended Complaint does not acknowledge that Plaintiffs were not in compliance with NMLB rules and regulations. Instead, it alleges Plaintiffs were charged but not convicted of criminal violations, and their license was revoked on that basis. There may very well be evidence showing Plaintiffs failed to meet the requirements for maintaining or renewing their livestock auction license, but consideration of such evidence is improper at this stage.

In any event, the Second Amended Complaint fails to support the insufficiency of process afforded to Plaintiffs. Ordinarily, the state may not deprive a person of a protected property interest without "some sort of hearing," but the required due process protections depend on particular contours of the situation. Guttman v. Khalsa, 669 F.3d 1101, 1114 (10th Cir. 2012). Due process thus demands "only a postdeprivation opportunity to establish error." Id. (quoting Camuglia v. City of Albuquerque, 448 F.3d 1214 (10th Cir. 2006). Applied here, Plaintiffs were not entitled to a hearing prior to the revocation of their license. Therefore, their claim survives only if they allege an insufficient post-deprivation opportunity to restore their license. Yet the Second Amended Complaint contains no mention of Plaintiffs' seeking any post-deprivation

review nor the inadequacy of any post-deprivation procedure of which they may avail themselves.  Even taking the Second Amended Complaint's allegations as true, it provides only speculation as to the purported deprivation of due process.  The claim must therefore be dismissed.

### 2. Plaintiffs' Class-of-One Equal Protection Claim Lacks Sufficient Factual Support to Survive the Motion to Dismiss

A plaintiff plausibly states a class-of-one equal protection claim by showing (1) he is "similarly situated in every material respect" to others treated differently, and (2) that the government action was "irrational and abusive" and "wholly unrelated to any legitimate state activity."  Kansas Penn Gaming, LLC, 656 F.3d at 1216 (internal quotation marks omitted).  The inquiry is an objective one, and the government's actions cannot be questioned if there exists a reasonable justification.  Id.  Although past precedent "required nothing more than the threadbare allegation of different treatment to similarly situated individuals," Twombly and Iqbal require plaintiffs to state enough factual support to render both elements plausible.  Id. at 1219.

As recounted supra, the Second Amended Complaint alleges the NMLB and its agents singled out Plaintiffs for burdensome requirements not similarly imposed on other auction licensees, livestock dealers, and haulers "similarly situated in every material respect."  Second Am. Compl. ¶ 98.  Absent any supporting facts, this conclusory statement cannot serve to establish that Plaintiffs were in fact similarly situated.  Kansas Penn Gaming, LLC, 656 F.3d at 1220.  Plaintiffs argue that Kansas Penn Gaming, LLC v. Collins does not control the outcome of this case because in that case, unlike here, the

defendants "came from divergent agencies or were private actors" and their "specific conduct . . . could not be determined as pleaded." Resp. to Mot. to Dismiss 23. But the holding in <u>Kansas Penn Gaming, LLC</u> is clear: a claim that others are similarly situated "must be supported by specific facts plausibly suggesting [they] are similar in all material respects." <u>Kansas Penn Gaming, LLC</u>, 656 F.3d at 1220. Because the Second Amended Complaint is silent as to the ways in which other auction licensees, livestock dealers, and haulers are similarly situated, Plaintiffs have failed to state a class-of-one equal protection claim.

**D.   Plaintiffs Cannot Sustain Their Malicious Prosecution Claim Under 42 U.S.C. § 1983**

Plaintiffs' final claim contains two separate allegations of malicious prosecution pursuant to § 1983. The first alleges Defendants pursued an indictment "on the basis of perjured, false testimony and suppressed exculpatory evidence at grand jury," Second Am. Compl. ¶ 107, and the second alleges Defendants "seiz[ed] property and Plaintiffs on the basis of an invalid warrant neither supported by probable cause or particularly described therein and seizing property on a separate occasion with no warrant at all." <u>Id.</u> at ¶ 108. Plaintiffs premise their first allegation on a violation of the Sixth and Fourteenth Amendments, and their second on a violation of the Fourth and Fourteenth Amendments.[5]

---

[5]  As the Tenth Circuit has recognized, § 1983 malicious prosecution claims do not implicate Fourteenth Amendment substantive due process standards. <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1560, 1561 n.3 (10th Cir. 1996). This court therefore construes

The "ultimate question" to any § 1983 malicious prosecution claim is whether the plaintiff has sufficiently alleged a constitutional violation. Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996). It follows that where defendants assert qualified immunity, plaintiffs must adequately plead a constitutional violation before this court may examine whether the identified right was clearly established at the time of the alleged violation. Id. at 1559. Plaintiffs' malicious prosecution claim derives from the same facts as their standalone Fourth, Sixth, and Fourteenth Amendment claims, all of which fail to state a constitutional violation or overcome qualified immunity. Absent any sufficiently alleged constitutional violations, Plaintiffs fail to state a claim for § 1983 malicious prosecution.

This court declines to consider the malicious abuse of process argument Plaintiffs raise in their Response. See Resp. 10–16. Notwithstanding Plaintiffs' failure to raise this argument in their Second Amended Complaint, it is worth noting that although New Mexico courts have indeed combined abuse of process and malicious prosecution into the single tort of malicious abuse of process, see DeVaney v. Thriftway Mktg. Corp, 953 P.2d 277, 283 (N.M. 1997), overruled on other grounds by Durham v. Guest, 145 N.M. 694, 701 (N.M. 2009), the Tenth Circuit has long disavowed reliance on the specific elements of malicious prosecution in any particular state. See Pierce v. Gilchrist, 359 F.3d 1279, 1288 (10th Cir. 2004). Instead, "federal courts fashioning constitutional analogues to traditional common law torts," such as § 1983 malicious prosecution claims,

Plaintiffs' reference to the Fourteenth Amendment as alleging only procedural due process violations.

"should refer to the <u>general</u> common law tradition." <u>Id.</u> at 1289 (emphasis added).

Because a large body of case law has developed around § 1983 malicious prosecution

claims in the Tenth Circuit, circuit precedent — not New Mexico law — provides the

lens through which this court must analyze such claims. <u>See, e.g.</u>, <u>Margheim v. Buljko</u>,

855 F.3d 1077, 1082 (10th Cir. 2017) (defining the elements of a § 1983 malicious

prosecution claim premised on the Fourth Amendment).

Failing to state any constitutional violation, Individual Defendants are entitled to

dismissal as to Plaintiffs' § 1983 malicious prosecution claim.

NOW, THEREFORE, IT IS ORDERED that Individual Defendants' Barry Allen,

Shawn Davis, and Ray Baca's Motion to Dismiss Federal Claims in the Second Amended

Complaint filed June 11, 2018 (ECF No. 42) is granted.

DATED this <u>19th</u> day of June 2019, at Santa Fe, New Mexico.

<u>Paul J. Kelly, Jr.</u>
United States Circuit Judge
Sitting by Designation

Counsel:

Pete V. Domenici, Jr., Domenici Law Firm, P.C., Albuquerque, New Mexico, for
Plaintiffs High Plains Producers, Inc. and Darcie Pareo; Wesley O. Pool, Pool Law Firm,
P.C., Clovis, New Mexico, for Plaintiff Michael Flen; Sandra Gallagher, Gallagher Law
Firm, Portales, New Mexico, for Plaintiff Calvin Pareo.

Randy S. Bartell, Randi N. Valverde, and Matthew A. Zidovsky, Montgomery &
Andrews, P.A., Santa Fe, New Mexico, for Defendants Barry Allen, Shawn Davis, Ray
Baca, and the New Mexico Livestock Board.